IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KEVA TYREE O'NEAL, | ) | |
| | ) | |
| Petitioner, | ) | 4:01cv3069 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| MICHAEL KENNEY, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court sua sponte. I have previously directed the parties to address issues regarding the statute of limitations, and I reaffirm my order of April 18, 2006 (filing no. 92) in every respect. This order is to notify the parties that one previously disputed issue appears to have been resolved by the decision of the United States Supreme Court in Day v. McDonough, __ S.Ct. __, 2006 WL 1071410 (April 25, 2006), holding that a federal district court may, in its discretion, raise the matter of the statute of limitations on its own initiative in a habeas corpus case, as long as the court accords the parties fair notice and an opportunity to show cause why the petition should not be dismissed as untimely. That was the procedure followed in this case (filing no. 51). A copy of the Supreme Court's decision is attached to this order.

SO ORDERED.

April 27, 2006.

BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge

2006 WL 1071410
Supreme Court of the United States

Patrick **DAY**, Petitioner,
v.
James R. **MCDONOUGH**, Interim Secretary, Florida Department of Corrections.
No. 04-1324.

Argued Feb. 27, 2006.
Decided April 25, 2006.

**Background:** Florida prisoner appealed pro se from an order of the United States District Court for the Northern District of Florida which dismissed his petition for a writ of habeas corpus as untimely. The United States Court of Appeals for the Eleventh Circuit, 391 F.3d 1192, affirmed, and the Supreme Court granted petition for writ of certiorari.

**Holdings:** The Supreme Court, Justice Ginsburg, held that:

4(1) district courts are permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition, abrogating *Scott v. Collins,* 286 F.3d 923, and *Nardi v. Stewart,* 354 F.3d 1134;

6(2) before acting on its own initiative to dismiss petition as untimely, court must accord the parties fair notice and an opportunity to present their positions; and

8(3) magistrate judge gave petitioner due notice and a fair opportunity to show why limitation period should not yield dismissal of untimely petition.

Affirmed.

Justice Stevens dissented from the judgment and filed opinion in which Justice Breyer joined.

Justice Scalia filed dissenting opinion in which Justice Thomas and Justice Breyer joined.

**[1] Federal Civil Procedure 170A ⚿755**

170A Federal Civil Procedure
　　170AVII Pleadings and Motions
　　　　170AVII(C) Answer
　　　　　　170AVII(C)2 Affirmative Defense or Avoidance
　　　　　　　　170Ak755 k. Limitations and Laches. Most Cited Cases
Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto, and a district court's decision to override a defendant's deliberate waiver of a limitations defense would be an abuse of discretion. Fed.Rules Civ.Proc.Rules 8(c), 12(b), 15(a), 28 U.S.C.A.

**[2] Federal Courts 170B ⚿461**

170B Federal Courts
　　170BVII Supreme Court
　　　　170BVII(B) Review of Decisions of Courts of Appeals
　　　　　　170Bk460 Review on Certiorari
　　　　　　　　170Bk461 k. Questions Not Presented Below or in Petition for Certiorari. Most Cited Cases
Question that was not set out in petition for certiorari, or fairly included therein, would not be considered by the Supreme Court on certiorari review.

**[3] Limitation of Actions 241 ⚿180(1)**

241 Limitation of Actions
　　241V Pleading, Evidence, Trial, and Review
　　　　241k180 Demurrer, Exception, or Motion Raising Defense
　　　　　　241k180(1) k. In General. Most Cited Cases
A statute of limitations defense is not jurisdictional, hence courts are under no obligation to raise the time bar sua sponte..

**[4] Habeas Corpus 197 ⚿603**

197 Habeas Corpus
　　197III Jurisdiction, Proceedings, and Relief
　　　　197III(A) In General
　　　　　　197k603 k. Laches or Delay. Most Cited Cases
District courts are permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition, even after the preanswer, initial screening stage of the habeas proceeding; abrogating *Scott v. Collins,* 286 F.3d 923, and *Nardi v. Stewart,* 354 F.3d 1134. 28 U.S.C.A. § 2244(d)(1)(A); Rules Governing § 2254 Cases, Rules 4, 5(b), 11, 28 U.S.C.A. foll. § 2254; Fed.Rules Civ.Proc.Rule 60(a), 28 U.S.C.A.

**[5] Attorney and Client 45 ⚿62**

45 Attorney and Client
　　45II Retainer and Authority
　　　　45k62 k. Rights of Litigants to Act in Person or by Attorney. Most Cited Cases

**Judges 227 ⚿24**

227 Judges

227III Rights, Powers, Duties, and Liabilities
227k24 k. Judicial Powers and Functions in General. Most Cited Cases

District judges have no obligation to act as counsel or paralegal to pro se litigants, and, by the same token, have no obligation to assist attorneys representing a state.

District judges have no obligation to act as counsel or paralegal to pro se litigants, and, by the same token, have no obligation to assist attorneys representing a state.

**[6] Habeas Corpus 197 🔑 603**

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
      197III(A) In General
         197k603 k. Laches or Delay. Most Cited Cases

Before acting on its own initiative to dismiss a state prisoner's habeas petition as untimely, a court must accord the parties fair notice and an opportunity to present their positions; the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition as time barred. 28 U.S.C.A. § 2244(d)(1)(A).

**[7] Habeas Corpus 197 🔑 603**

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
      197III(A) In General
         197k603 k. Laches or Delay. Most Cited Cases

If a state intelligently chooses to waive a statute of limitations defense to a state prisoner's habeas petition, a district court is not at liberty to disregard that choice. 28 U.S.C.A. § 2244(d)(1)(A).

**[8] Habeas Corpus 197 🔑 603**

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
      197III(A) In General
         197k603 k. Laches or Delay. Most Cited Cases

Magistrate judge gave habeas petitioner due notice and a fair opportunity to show why the limitation period should not yield dismissal of untimely petition, before sua sponte recommending dismissal of petition, where notice issued some nine months after state answered the petition, no court proceedings or action occurred in the interim, and nothing in record suggested that state

"strategically" withheld the defense or chose to relinquish it; rather, there was merely an inadvertent error, namely, a miscalculation that was plain under circuit precedent. 28 U.S.C.A. § 2244(d)(1)(A).
*Syllabus* [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

**\*1** The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) sets a one-year limitation period for filing a state prisoner's federal habeas corpus petition, running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A), but stops the one-year clock while the petitioner's "properly filed" application for state postconviction relief "is pending," § 2244(d)(2). Under Eleventh Circuit precedent, which is not challenged here, that tolling period does not include the 90 days in which a petitioner might have sought certiorari review in this Court challenging state-court denial of postconviction relief.

Petitioner Day's Florida trial-court sentence was affirmed on December 21, 1999, and his time to seek this Court's review of the final state-court decision expired on March 20, 2000. Day unsuccessfully sought state postconviction relief 353 days later. The trial court's judgment was affirmed on appeal, effective December 3, 2002. Day petitioned for federal habeas relief 36 days later, on January 8, 2003. Florida's answer asserted that the petition was "timely" because it was filed after 352 days of untolled time. Inspecting the answer and attachments, however, a Federal Magistrate Judge determined that the State had miscalculated the tolling time: Under the controlling Eleventh Circuit precedent, the untolled time was actually 388 days, rendering the petition untimely. After affording Day an opportunity to show cause why the petition should not be dismissed for failure to meet AEDPA's one-year deadline, the Magistrate Judge found petitioner's responses inadequate and recommended dismissal. The District Court adopted the recommendation, and the Eleventh Circuit affirmed, concluding that a State's patently erroneous concession of timeliness does not compromise a district court's authority *sua sponte* to dismiss a habeas petition as untimely.

*Held:* In the circumstances here presented, the District Court had discretion to correct the State's erroneous

computation and, accordingly, to dismiss the habeas petition as untimely under AEDPA's one-year limitation. Pp. ---- - ----2-11.

(a) A statute of limitations defense is not jurisdictional, therefore courts are under no obligation to raise the matter *sua sponte*. Cf. *Kontrick v. Ryan,* 540 U.S. 443, 458, 124 S.Ct. 906, 157 L.Ed.2d 867. As a general matter, a defendant forfeits a statute of limitations defense not asserted in its answer or in an amendment thereto. See Federal Rules of Civil Procedure 8(c), 12(b), and 15(a) (made applicable to federal habeas proceedings by Rule 11 of the Rules governing such proceedings). And the Court would count it an abuse of discretion to override a State's deliberate waiver of the limitations defense. But, in appropriate circumstances, a district court may raise a time bar on its own initiative. The District Court in this case confronted no intelligent waiver on the State's part, only an evident miscalculation of time. In this situation the Court declines to adopt either an inflexible rule requiring dismissal whenever AEDPA's one-year clock has run, or, at the opposite extreme, a rule treating the State's failure initially to plead the one-year bar as an absolute waiver. Rather, the Court holds that a district court has discretion to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition. This resolution aligns the statute of limitations with other affirmative defenses to habeas petitions, notably exhaustion of state remedies, procedural default, and nonretroactivity. In *Granberry v. Greer,* 481 U.S. 129, 133, 107 S.Ct. 1671, 95 L.Ed.2d 119, this Court held that federal appellate courts have discretion to consider a state prisoner's failure to exhaust available state remedies before invoking federal habeas jurisdiction despite the State's failure to interpose the exhaustion defense at the district-court level. Similarly, in *Caspari v. Bohlen,* 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236, the Court held that "a federal court may, but need not, decline to apply [the nonretroactivity rule announced in *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334,] if the State does not argue it." It would make scant sense to distinguish AEDPA's time bar from these other threshold constraints on federal habeas petitioners. While a district court is not required to double-check the State's math, cf. *Pliler v. Ford,* 542 U.S. 225, 231, 124 S.Ct. 2441, 159 L.Ed.2d 338, no Rule, statute, or constitutional provision commands a judge who detects a clear computation error to suppress that knowledge. Cf. Fed. Rule Civ. Proc. 60(a). The Court notes particularly that the Magistrate Judge, instead of acting *sua sponte,* might have informed the State of its obvious computation error and entertained an amendment to the State's answer. See, *e.g.,* Fed. Rule Civ. Proc. 15(a). There is no dispositive difference between that route, and the one taken here. Pp. ---- - ----2-10.

(b) Before acting *sua sponte,* a court must accord the parties fair notice and an opportunity to present their positions. It must also assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and "determine whether the interests of justice would be better served" by addressing the merits or by dismissing the petition as time barred. See *Granberry,* 481 U.S., at 136, 107 S.Ct. 1671. Here, the Magistrate Judge gave Day due notice and a fair opportunity to show why the limitation period should not yield dismissal. The notice issued some nine months after the State's answer. No court proceedings or action occurred in the interim, and nothing suggests that the State "strategically" withheld the defense or chose to relinquish it. From all that appears in the record, there was merely an inadvertent error, a miscalculation that was plain under Circuit precedent, and no abuse of discretion in following *Granberry* and *Caspari.* P. ----11.

**\*2** 391 F.3d 1192, affirmed.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, SOUTER, and ALITO, JJ., joined. STEVENS, J., filed an opinion dissenting from the judgment, in which BREYER, J., joined. SCALIA, J., filed a dissenting opinion, in which THOMAS and BREYER, JJ., joined.

J. Brett Busby, for petitioner.
Christopher M. Kise, for respondent.
Douglas Hallward-Driemeier, for the United States as amicus curiae, by special leave of the Court, supporting the respondent.
Andrew H. Schapiro, Mayer, Brown, Rowe & Maw LLP, New York, NY, J. Brett Busby, Counsel of Record, Jeremy Gaston, Amy P. Mohan, Mayer, Brown, Rowe & Maw, LLP, Houston, TX, Counsel for Petitioner.
Charles J. Crist, Jr., Attorney General of Florida, Erik M. Figlio, Deputy Solicitor General, Cassandra K. Dolgin, Assistant Attorney General, Christopher M. Kise, Solicitor General of Florida, Counsel of Record, Lynn C. Hearn, Deputy Solicitor General, Office of the Attorney General, Tallahassee, FL, Respondent's Brief on the Merits.For U.S. Supreme Court briefs, see:2005 WL 3279092 (Pet.Brief)2006 WL 148575 (Resp.Brief)2006 WL 368559 (Reply.Brief)
Justice GINSBURG delivered the opinion of the Court. This case concerns the authority of a U.S. District Court, on its own initiative, to dismiss as untimely a

state prisoner's petition for a writ of habeas corpus. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, sets a one-year limitation period for filing such petitions, running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The one-year clock is stopped, however, during the time the petitioner's "properly filed" application for state postconviction relief "is pending." § 2244(d)(2). Under Eleventh Circuit precedent, that tolling period does not include the 90 days in which a petitioner might have sought certiorari review in this Court challenging state-court denial of postconviction relief. *Coates v. Byrd,* 211 F.3d 1225, 1227 (C.A.11 2000).

In the case before us, the State's answer to the federal habeas petition "agree[d] the petition [was] timely" because it was "filed after 352 days of untolled time." App. 24. Inspecting the pleadings and attachments, a Federal Magistrate Judge determined that the State had miscalculated the tolling time. Under Circuit precedent, the untolled time was 388 days, rendering the petition untimely by some three weeks. After affording the petitioner an opportunity to show cause why the petition should not be dismissed for failure to meet the statutory deadline, and finding petitioner's responses inadequate, the Magistrate Judge recommended dismissal of the petition. The District Court adopted the Magistrate Judge's recommendation, and the Court of Appeals affirmed, concluding that "[a] concession of timeliness by the state that is patently erroneous does not compromise the authority of a district court *sua sponte* to dismiss a habeas petition as untimely, under AEDPA." *Day v. Crosby,* 391 F.3d 1192, 1195 (C.A.11 2004).

**\*3** [1] The question presented is whether a federal court lacks authority, on its own initiative, to dismiss a habeas petition as untimely, once the State has answered the petition without contesting its timeliness. Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto. Fed. Rules Civ. Proc. 8(c), 12(b), and 15(a). And we would count it an abuse of discretion to override a State's deliberate waiver of a limitations defense. In this case, however, the federal court confronted no intelligent waiver on the State's part, only an evident miscalculation of the elapsed time under a statute designed to impose a tight time constraint on federal habeas petitioners. [FN1] In the circumstances here presented, we hold, the federal court had discretion to correct the State's error and, accordingly, to dismiss the petition as untimely under AEDPA's one-year limitation.

FN1. Until AEDPA took effect in 1996, no statute of limitations applied to habeas petitions. See *Mayle v. Felix,* 545 U.S. ----, ----, 125 S.Ct. 2562, 2571, 162 L.Ed.2d 582 (2005). Courts invoked the doctrine of "prejudicial delay" to screen out unreasonably late filings. See generally 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure § 24 (4th ed.2001). In AEDPA, Congress prescribed a uniform rule: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).

I

Petitioner Patrick A. Day was convicted of second-degree murder and sentenced to 55 years in prison by a Florida trial court. Day unsuccessfully appealed the sentence, which was affirmed on December 21, 1999. Day did not seek this Court's review of the final state-court decision; his time to do so expired on March 20, 2000.

[2] Three hundred and fifty-three (353) days later, Day unsuccessfully sought state postconviction relief. The Florida trial court's judgment denying relief was affirmed on appeal, and the appellate court issued its mandate on December 3, 2002. See *Nyland v. Moore,* 216 F.3d 1264, 1267 (C.A.11 2000) (under Florida law, appellate order "is pending" until the mandate issues). Thirty-six (36) days thereafter, on January 8, 2003, Day petitioned for federal habeas relief asserting several claims of ineffective assistance of trial counsel. A Magistrate Judge, finding the petition "in proper form," App. 21, ordered the State to file an answer, *id.,* at 21-22. In its responsive pleading, the State failed to raise AEDPA's one-year limitation as a defense. See *supra,* at ----2. Overlooking controlling Eleventh Circuit precedent, see *Coates,* 211 F.3d, at 1227, the State calculated that the petition had been "filed after 352 days of untolled time," and was therefore "timely." App. 24. The State's answer and attachments, however, revealed that, had the State followed the Eleventh Circuit's instruction on computation of elapsed time, the timeliness concession would not have been made: Under the Circuit's precedent, more than one year, specifically, 388 days of untolled time, had passed between the finality of Day's state-court conviction and the filing of his federal habeas petition. [FN2]

FN2. Day urges this Court to find his petition timely. He asserts that the Eleventh Circuit misinterpreted § 2244(d)(2) in holding that

AEDPA's time limitation was not tolled during the 90-day period he could have petitioned this Court to review the denial of his motion for state postconviction relief. See Brief for Petitioner 45-50. This question was not "set out in the petition [for certiorari], or fairly included therein," and we therefore do not consider it here. This Court's Rule 14.1(a). We note, however, that the Court recently granted certiorari in *Lawrence v. Florida,* --- U.S. ----, 126 S.Ct. 1625, --- L.Ed.2d ---- (cert.granted, Mar. 27, 2006), which presents the question whether AEDPA's time limitation is tolled during the pendency of a petition for certiorari from a judgment denying state postconviction relief. The instant opinion, we emphasize, addresses only the authority of the District Court to raise AEDPA's time bar, not the correctness of its decision that the limitation period had run.

A newly assigned Magistrate Judge noticed the State's computation error and ordered Day to show cause why his federal habeas petition should not be dismissed as untimely. *Id.,* at 26-30. Determining that Day's responses did not overcome the time bar, the Magistrate Judge recommended dismissal of the petition, App. to Pet. for Cert. 8a-15a, and the District Court adopted that recommendation, *id.,* at 7a.

**\*4** The Eleventh Circuit granted Day a certificate of appealability on the question "[w]hether the district court erred in addressing the timeliness of [Day's] habeas corpus petition ... after the [State] had conceded that [the] petition was timely." App. 37. In a decision rendered two years earlier, *Jackson v. Secretary for Dept. of Corrections,* 292 F.3d 1347 (2002), the Eleventh Circuit had ruled that, "even though the statute of limitations is an affirmative defense, the district court may review *sua sponte* the timeliness of [a federal habeas] petition." *Id.,* at 1349. Adhering to *Jackson,* and satisfied that the State's concession of timeliness "was patently erroneous," the Eleventh Circuit affirmed the dismissal of Day's petition. 391 F.3d, at 1192-1195. FN3

FN3. Day reads the Eleventh Circuit's opinion in this case as rendering mandatory a district court's *sua sponte* application of AEDPA's one-year limitation, even when the respondent elects to waive the limitation and oppose the petition solely on the merits. See Tr. of Oral Arg. 6-8. He points to a sentence in the Eleventh Circuit's brief *per curiam* opinion stating: "A federal court that sits in collateral review of a criminal judgment of a state court has an obligation to enforce the federal statute of limitations." 391 F.3d, at 1194. We read the Eleventh Circuit's summary disposition in line with that court's description of its controlling precedent: "We ... ruled that, 'even though the statute of limitations is an affirmative defense, the district court *may* review *sua sponte* the timeliness of [a federal habeas] petition.' " *Ibid.* (referring to *Jackson v. Secretary for Dept. of Corrections,* 292 F.3d, at 1349 (emphasis added)); see also 391 F.3d, at 1195 (State's "patently erroneous" concession of timeliness "does not compromise *the authority* of a district court *sua sponte* to dismiss a habeas petition as untimely" under AEDPA's one-year limitation (emphasis added)).

We granted certiorari *sub nom. Day v. Crosby,* 545 U.S. ----, 126 S.Ct. 34, 162 L.Ed.2d 932 (2005), in view of the division among the Circuits on the question whether a district court may dismiss a federal habeas petition as untimely under AEDPA, despite the State's failure to raise the one-year limitation in its answer to the petition or its erroneous concession of the timeliness issue. Compare, *e.g., Long v. Wilson,* 393 F.3d 390, 401-404 (C.A.3 2004), and 391 F.3d, at 1194-1195 (case below), with *Scott v. Collins,* 286 F.3d 923, 930-931 (C.A.6 2002), and *Nardi v. Stewart,* 354 F.3d 1134, 1141-1142 (C.A.9 2004).

II

[3] A statute of limitations defense, the State acknowledges, is not "jurisdictional," hence courts are under no *obligation* to raise the time bar *sua sponte*. See, *e.g., Acosta v. Artuz,* 221 F.3d 117, 122 (C.A.2 2000); *Hill v. Braxton,* 277 F.3d 701, 705 (C.A.4 2002); *Davis v. Johnson,* 158 F.3d 806, 810 (C.A.5 1998); cf. *Kontrick v. Ryan,* 540 U.S. 443, 458, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (defendant forfeited untimeliness argument "by failing to raise the issue until after [the] complaint was adjudicated on the merits"). In this respect, the limitations defense resembles other threshold barriers-exhaustion of state remedies, procedural default, nonretroactivity-courts have typed "nonjurisdictional," although recognizing that those defenses "implicat[e] values beyond the concerns of the parties." *Acosta,* 221 F.3d, at 123 ("The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time.").

On the exhaustion of state remedies doctrine, requiring state prisoners, before invoking federal habeas jurisdiction, to pursue remedies available in state court, *Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), is the pathmarking case. We held in *Granberry* that federal appellate courts have discretion to consider the issue of exhaustion despite the State's failure to interpose the defense at the district-court level. *Id.,* at 133, 107 S.Ct. 1671. [FN4] Later, in *Caspari v. Bohlen,* 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994), we similarly held that "a federal court may, but need not, decline to apply [the nonretroactivity rule announced in *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989),] if the State does not argue it." See also *Schiro v. Farley,* 510 U.S. 222, 229, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (declining to address nonretroactivity defense that State raised only in Supreme Court merits brief, "[a]lthough we undoubtedly have the discretion to reach" the argument).

> FN4. In AEDPA, enacted nearly a decade after *Granberry,* Congress expressly provided that "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3).

**\*5** While the issue remains open in this Court, see *Trest v. Cain,* 522 U.S. 87, 90, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997), [FN5] the Courts of Appeals have unanimously held that, in appropriate circumstances, courts, on their own initiative, may raise a petitioner's procedural default, *i.e.,* a petitioner's failure properly to present an alleged constitutional error in state court, and the consequent adequacy and independence of state-law grounds for the state-court judgment. See *Brewer v. Marshall,* 119 F.3d 993, 999 (C.A.1 1997); *Rosario v. United States,* 164 F.3d 729, 732 (C.A.2 1998); *Sweger v. Chesney,* 294 F.3d 506, 520 (C.A.3 2002); *Yeatts v. Angelone,* 166 F.3d 255, 261 (C.A.4 1999); *Magouirk v. Phillips,* 144 F.3d 348, 358 (C.A.5 1998); *Sowell v. Bradshaw,* 372 F.3d 821, 830 (C.A.6 2004); *Kurzawa v. Jordan,* 146 F.3d 435, 440 (C.A.7 1998); *King v. Kemna,* 266 F.3d 816, 822 (C.A.8 2001) (en banc); *Vang v. Nevada,* 329 F.3d 1069, 1073 (C.A.9 2003); *United States v. Wiseman,* 297 F.3d 975, 979 (C.A.10 2002); *Moon v. Head,* 285 F.3d 1301, 1315, n. 17 (C.A.11 2002).

> FN5. *Trest* held that a Court of Appeals was not obliged to raise procedural default on its own initiative, but declined to decide whether courts have discretion to do so. 522 U.S., at 89, 118 S.Ct. 478.

[4] Petitioner Day relies heavily on Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules), *i.e.,* the procedural Rules governing federal habeas petitions from state prisoners, in urging that AEDPA's limitation may be raised by a federal court *sua sponte* only at the preanswer, initial screening stage. Habeas Rule 4 provides that district courts "must promptly examine" state prisoner habeas petitions and must dismiss the petition "[i]f it plainly appears ... that the petitioner is not entitled to relief." Once an answer has been ordered and filed, Day maintains, the court loses authority to rule the petition untimely *sua sponte*. [FN6] At that point, according to Day, the Federal Rules of Civil Procedure hold sway. See Habeas Rule 11 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). [FN7] Under the Civil Procedure Rules, a defendant forfeits a statute of limitations defense, see Fed. Rule Civ. Proc. 8(c), not asserted in its answer, see Rule 12(b), or an amendment thereto, see Rule 15(a).

> FN6. Were we to accept Day's position, courts would never (or, at least, hardly ever) be positioned to raise AEDPA's time bar *sua sponte*. As this Court recognized in *Pliler v. Ford,* 542 U.S. 225, 232, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004), information essential to the time calculation is often absent-as it was in this case-until the State has filed, along with its answer, copies of documents from the state-court proceedings.

> FN7. The Habeas Rules were amended after the proceedings below. We cite the current version because both parties agree that the amendments to Rules 4 and 11, effective December 1, 2004, wrought no relevant substantive change.

The State, on the other hand, points out that the statute of limitations is akin to other affirmative defenses to habeas petitions, notably exhaustion of state remedies, procedural default, and nonretroactivity. Indeed, the statute of limitations is explicitly aligned with those other defenses under the current version of Habeas Rule 5(b), which provides that the State's answer to a habeas petition "must state whether any claim in the petition is barred by a failure to exhaust state remedies, a

procedural bar, non-retroactivity, or a statute of limitations." The considerations of comity, finality, and the expeditious handling of habeas proceedings that motivated AEDPA, [FN8] the State maintains, counsel against an excessively rigid or formal approach to the affirmative defenses now listed in Habeas Rule 5. Citing *Granberry,* 481 U.S., at 131-134, 107 S.Ct. 1671, as the instructive case, the State urges express recognition of an "intermediate approach." Brief for Respondent 14 (internal quotation marks omitted); see also *id.,* at 25. In lieu of an inflexible rule requiring dismissal whenever AEDPA's one-year clock has run, or, at the opposite extreme, a rule treating the State's failure initially to plead the one-year bar as an absolute waiver, the State reads the statutes, Rules, and decisions in point to permit the "exercise [of] discretion in each case to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition." *Id.,* at 14. Employing that "intermediate approach" in this particular case, the State argues, the petition should not be deemed timely simply because a government attorney calculated the days in between petitions incorrectly.

> FN8. See *Rhines v. Weber,* 544 U.S. 269, 276, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) (AEDPA's time bar "quite plainly serves the well-recognized interest in the finality of state court judgments"; it "reduces the potential for delay on the road to finality[.]" (quoting *Duncan v. Walker,* 533 U.S. 167, 179, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001))).

**\*6** We agree, noting particularly that the Magistrate Judge, instead of acting *sua sponte,* might have informed the State of its obvious computation error and entertained an amendment to the State's answer. See Fed. Rule Civ. Proc. 15(a) (leave to amend "shall be freely given when justice so requires"); see also 28 U.S.C. § 2243 (State's response to habeas petition may be amended by leave of court); cf. *Long,* 393 F.3d, at 402-404 (District Court raised the statute of limitations *sua sponte,* the State agreed with that disposition, and the Court of Appeals treated that agreement as a constructive amendment to the State's answer). Recognizing that an amendment to the State's answer might have obviated this controversy, [FN9] we see no dispositive difference between that route, and the one taken here. See Brief for Respondent 24 ("Here, the State did not respond to the show cause order because its concession of timeliness was based on an erroneous calculation and it agreed the petition should be dismissed as untimely."); cf. *Slack v. McDaniel,* 529 U.S. 473, 487, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (admonishing against interpretation of procedural prescriptions in federal habeas cases to "trap the unwary *pro se* prisoner" (quoting *Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982))).

> FN9. The Court is unanimous on this point. See *post,* at ----, n. 2 (SCALIA, J., dissenting).

[5] In sum, we hold that district courts are permitted, but not obliged, to consider, *sua sponte,* the timeliness of a state prisoner's habeas petition. We so hold, noting that it would make scant sense to distinguish in this regard AEDPA's time bar from other threshold constraints on federal habeas petitioners. See *supra,* at ---- - ----6-7; Habeas Rule 5(b) (placing "a statute of limitations" defense on a par with "failure to exhaust state remedies, a procedural bar, [and] non-retroactivity"); *Long,* 393 F.3d, at 404 ("AEDPA's statute of limitations advances the same concerns as those advanced by the doctrines of exhaustion and procedural default, and must be treated the same."). We stress that a district court is not required to double-check the State's math. If, as this Court has held, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," *Pliler v. Ford,* 542 U.S. 225, 231, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004), [FN10] then, by the same token, they surely have no obligation to assist attorneys representing the State. Nevertheless, if a judge does detect a clear computation error, no Rule, statute, or constitutional provision commands the judge to suppress that knowledge. Cf. Fed. Rule Civ. Proc. 60(a) (clerical errors in the record "arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party").

> FN10. The procedural hindrance in *Pliler* was the petitioner's failure to exhaust state remedies. The Court in that case declined to rule on the propriety of the stay-and-abeyance procedure that would enable a habeas petitioner to remain in federal court while exhausting unexhausted claims in state court. 542 U.S., at 231, 124 S.Ct. 2441. In a later decision, *Rhines,* 544 U.S., at 278-279, 125 S.Ct. 1528, this Court held that a district court has discretion to stay a mixed petition (*i.e.,* one that includes both exhausted and unexhausted claims) to allow a habeas petitioner to present his unexhausted claims to the state court in the first instance, then return to federal court for review of his perfected petition.

**\*7** [6][7][8] Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions. See, *e.g., Acosta,* 221 F.3d, at 124-125; *McMillan v. Jarvis,* 332 F.3d 244, 250 (C.A.4 2003). Further, the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and "determine whether the interests of justice would be better served" by addressing the merits or by dismissing the petition as time barred. See *Granberry,* 481 U.S., at 136, 107 S.Ct. 1671. [FN11] Here, the Magistrate Judge gave Day due notice and a fair opportunity to show why the limitation period should not yield dismissal of the petition. The notice issued some nine months after the State answered the petition. No court proceedings or action occurred in the interim, and nothing in the record suggests that the State "strategically" withheld the defense or chose to relinquish it. From all that appears in the record, there was merely an inadvertent error, a miscalculation that was plain under Circuit precedent, and no abuse of discretion in following this Court's lead in *Granberry* and *Caspari,* described *supra,* at ---- - ----6-7.

> FN11. A district court's discretion is confined within these limits. As earlier noted, should a State intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice. See *supra,* at ----. But see *post,* at ---- (SCALIA, J., dissenting).

\* \* \*

For the reasons stated, the judgment of the Court of Appeals is

***Affirmed.***

---

Justice STEVENS, with whom Justice BREYER joins, **dissenting** from the judgment.

**\*8** Although Justice BREYER and I disagree on the proper answer to the question on which we granted certiorari-in my view, Justice GINSBURG's opinion for the Court correctly decides that question, while Justice BREYER has joined Justice SCALIA's dissenting opinion-we agree on the proper disposition of this case. In our view, the Court should announce its opinion now, but it should postpone the entry of judgment pending our decision in *Lawrence v. Florida,* --- U.S. ----, 126 S.Ct. 1625, --- L.Ed.2d ---- (cert.granted, Mar. 27, 2006). As Justice GINSBURG notes, the question whether the Court of Appeals correctly concluded that Day's habeas corpus petition was barred by the statute of limitations will be answered by our decision in *Lawrence.* See *ante,* at ----4, n. 2. It seems improvident to affirm a possibly erroneous Court of Appeals judgment that dismissed Day's habeas petition without an evaluation of its merits when we have already granted certiorari to address the issue on which the Court of Appeals may have erred. Of course, the Court of Appeals may avoid a miscarriage of justice by keeping this case on its docket until after we decide *Lawrence,* but it would be better practice for us to do so ourselves. Accordingly, we respectfully dissent from the entry of the Court's judgment at this time.

Justice SCALIA, with whom Justice THOMAS and Justice BREYER join, **dissenting**.

The Court today disregards the Federal Rules of Civil Procedure (Civil Rules) in habeas corpus cases, chiefly because it believes that this departure will make no difference. See *ante,* at ----9. Even if that were true, which it is not, I could not join this novel presumption *against* applying the Civil Rules.

The Civil Rules "govern the procedure in the United States district courts in all suits of a civil nature." Rule 1. This includes "proceedings for ... habeas corpus," Rule 81(a)(2), but only "to the extent that the practice in such proceedings is not set forth in statutes of the United States [or] the Rules Governing Section 2254 Cases [Habeas Rules]," Civil Rule 81(a)(2); see also Habeas Rule 11. Thus, "[t]he Federal Rules of Civil Procedure apply in the context of habeas suits to the extent that they are not inconsistent with the Habeas Corpus Rules," *Woodford v. Garceau,* 538 U.S. 202, 208, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003), and do not contradict or undermine the provisions of the habeas corpus statute, *Gonzalez v. Crosby,* 545 U.S. ----, ----, 125 S.Ct. 2641, 2644-2645, 162 L.Ed.2d 480 (2005).

As the Court notes, the Civil Rules adopt the traditional forfeiture rule for unpleaded limitations defenses. See *ante,* at ----8 (citing Rules 8(c), 12(b), 15(a)). The Court does not identify any "inconsisten[cy]" between this forfeiture rule and the statute, Rules, or historical practice of habeas proceedings-because there is none. Forfeiture of the limitations defense is demonstrably not inconsistent with traditional habeas practice, because, as the Court acknowledges, habeas practice included no statute of limitations until 1996. *Ante,* at ----2, n. 1; see also *infra,* at --- - ----3-5. Forfeiture is perfectly consistent with Habeas Rule 5(b), which now

provides that the State's "answer ... *must* state whether any claim in the petition is barred by ... statute of limitations." (Emphasis added.) And forfeiture is also consistent with (and indeed, arguably suggested by) Habeas Rule 4, because Rule 4 provides for *sua sponte* screening and dismissal of habeas petitions only *prior* to the filing of the State's responsive pleading.[FN1]

> FN1. The Court observes that "[w]ere we to accept Day's position, courts would never (or, at least, hardly ever) be positioned to raise AEDPA's [Antiterrorism and Effective Death Penalty Act of 1996] time bar *sua sponte*," because "information essential to the time calculation is often absent" at the Rule 4 prescreening stage, *ante,* at ---- - ----7-8, n. 6. But to be distressed at this phenomenon is to beg the question-that is, to assume that courts *ought* to "be positioned to raise AEDPA's time bar *sua sponte*." That is precisely the question before us.

Most importantly, applying the forfeiture rule to the limitations period of 28 U.S.C. § 2244(d) does not contradict or undermine any provision of the habeas statute. Quite the contrary, on its most natural reading, the statute calls for the forfeiture rule. AEDPA expressly enacted, without further qualification, "[a] 1-year *period of limitation*" for habeas applications by persons in custody pursuant to the judgments of state courts. § 2244(d)(1) (emphasis added). We have repeatedly stated that the enactment of time-limitation periods such as that in § 2244(d), without further elaboration, produces defenses that are nonjurisdictional and thus subject to waiver and forfeiture. See *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); see also *Eberhart v. United States,* 546 U.S. ----, ----, 126 S.Ct. 403, 406, 163 L.Ed.2d 14 (2005) *(per curiam)*; *Kontrick v. Ryan,* 540 U.S. 443, 447, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). Absent some affirmative incompatibility with habeas practice, there is no reason why a habeas limitations period should be any different. By imposing an unqualified "period of limitation" against the background understanding that a defense of "limitations" must be raised in the answer, see Civil Rules 8(c), 12(b), the statute implies that the usual forfeiture rule is applicable.

**\*9** Instead of identifying an inconsistency between habeas corpus practice and the usual civil forfeiture rule, the Court urges that "it would make scant sense to distinguish in this regard AEDPA's time bar from other threshold constraints on federal habeas petitioners" that may be raised *sua sponte-ante,* at ----10-namely, exhaustion of state remedies, procedural default, nonretroactivity, and (prior to AEDPA) abuse of the writ. See *Granberry v. Greer,* 481 U.S. 129, 133, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987) (exhaustion); *Caspari v. Bohlen,* 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (nonretroactivity). But unlike AEDPA's statute of limitations, these defenses were all created by the habeas courts themselves, in the exercise of their traditional equitable discretion, see *Withrow v. Williams,* 507 U.S. 680, 717-718, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (SCALIA, J., concurring in part and dissenting in part), because they were seen as necessary to protect the interests of comity and finality that federal collateral review of state criminal proceedings necessarily implicates. See *McCleskey v. Zant,* 499 U.S. 467, 489-491, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (abuse of the writ); *Wainwright v. Sykes,* 433 U.S. 72, 80-81, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (procedural default); *Teague v. Lane,* 489 U.S. 288, 308, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (nonretroactivity); *Rose v. Lundy,* 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (exhaustion of state remedies). Unlike these other defenses, no time limitation-not even equitable laches-was imposed to vindicate comity and finality. AEDPA's 1-year limitations period is entirely a recent creature of statute. See *ante,* at ----2, n. 1. If comity and finality did not compel any time limitation at all, it follows *a fortiori* that they do not compel making a legislatively created, forfeitable time limitation *nonforfeitable*.

In fact, prior to the enactment of AEDPA, we affirmatively rejected the notion that habeas courts' traditionally broad discretionary powers would support their imposition of a time bar. Historically, "there [wa]s no statute of limitations governing federal habeas, and the only laches recognized [wa]s that which affects the State's ability to defend against the claims raised on habeas"-which was imposed by Rule, and not until 1977. *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); see also *United States v. Smith,* 331 U.S. 469, 475, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947); 17A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4268.2, p. 497-498 (2d ed.1988) (hereinafter Wright & Miller). We repeatedly asserted that the passage of time alone could not extinguish the habeas corpus rights of a person subject to unconstitutional incarceration. See *Pennsylvania ex rel. Herman v. Claudy,* 350 U.S. 116, 123, 76 S.Ct. 223, 100 L.Ed. 126 (1956); *Chessman v. Teets,* 354 U.S. 156, 164-165, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957). For better or for worse, this doctrine was so well entrenched that the lower courts regularly entertained petitions filed after even extraordinary delays. See, *e.g., Hawkins v. Bennett,* 423 F.2d 948, 949 (C.A.8 1970) (40 years); *Hamilton v. Watkins,* 436

F.2d 1323, 1325 (C.A.5 1970) (at least 36 years); *Hannon v. Maschner,* 845 F.2d 1553, 1553-1555 (C.A.10 1988) (at least 24 years). And in 1977, when enactment of the former Habeas Rule 9(a) "introduce[d] for the first time an element of laches into habeas corpus," 17A Wright & Miller § 4268.2, at 498-by adopting the rule against " 'prejudicial delay' " to which the Court refers, *ante,* at ----2, n. 1-even that limited doctrine was treated as subject to the very same pleading requirements and forfeiture rule that the Court rejects today for the stricter limitations period of § 2244(d). See *Smith v. Secretary of New Mexico Dept. of Corrections,* 50 F.3d 801, 821-822, n. 30 (C.A.10 1995); see also *McDonnell v. Estelle,* 666 F.2d 246, 249 (C.A.5 1982).

**\*10** There is, therefore, no support for the notion that the traditional equitable discretion that governed habeas proceedings permitted the dismissal of habeas petitions on the sole ground of untimeliness. Whether or not it should have, see *Collins v. Byrd,* 510 U.S. 1185, 1186-1187, 114 S.Ct. 1288, 127 L.Ed.2d 642 (1994) (SCALIA, J., dissenting), it did not. The Court's reliance on pre-existing equitable doctrines like procedural default and nonretroactivity is, therefore, utterly misplaced. Nothing in our tradition of *refusing* to dismiss habeas petitions as untimely justifies the Court's decision to beef up the presumptively forfeitable "limitations period" of § 2244(d) by making it the subject of *sua sponte* dismissal.

In what appears to be the chief ground of its decision, the Court also observes that "the Magistrate Judge, instead of acting *sua sponte,* might have informed the State of its obvious computation error and entertained an amendment to the State's answer" under Civil Rule 15(a). *Ante,* at ----9. "Although an amendment to the State's answer might have obviated this controversy," the Court concedes, "we see no dispositive difference between that route, and the one taken here." *Ibid.* But this consideration cuts in the opposite direction. If there truly were no "dispositive difference" between following and disregarding the rules that Congress has enacted, the natural conclusion would be that there is no compelling reason to *disregard* the Civil Rules. [FN2] Legislatively enacted rules are surely entitled to more respect than this apparent presumption that, when nothing substantial hangs on the point, they do *not* apply as written. And, unlike the novel regime that the Court adopts today, which will apparently require the development of new rules from scratch, there already exists a well-developed body of law to govern the district courts' exercise of discretion under Rule 15(a). See 6 Wright & Miller §§ 1484-1488 (2d ed.1990 and Supp.2005). Ockham is offended by today's decision, even if no one else is.

FN2. I agree with the Court that today's decision will have little impact on the outcome of district court proceedings. In particular, I agree that "if a [district] judge does detect a clear computation error, no Rule, statute, or constitutional provision commands the judge to suppress that knowledge," *ante,* at ----10. Rather, a judge may call the timeliness issue to the State's attention and invite a motion to amend the pleadings under Civil Rule 15(a), under which "leave shall be freely given when justice so requires." In fact, in providing for leave whenever "justice so requires," Rule 15(a), the Civil Rules fully accommodate the comity and finality interests that the Court thinks require a departure from the Civil Rules, see *ante,* at --- - ----, ----6-7, 10. Requiring the State to take the affirmative step of amending its own pleading at least observes the formalities of our adversary system, which is a nontrivial value it itself. See *United States v. Burke,* 504 U.S. 229, 246, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (SCALIA, J., concurring in judgment).

**\*11** But, in fact, there are at least two notable differences between the Civil Rules and the *sua sponte* regime of such cases as *Granberry* and *Caspari*-both of which involve sufficiently significant departures from ordinary civil practice as to require clear authorization from the statute, the Rules, or historical habeas practice. First, the *Granberry* regime allows the forfeited procedural defense to be raised for the first time on appeal, either by the State or by the appellate court *sua sponte*. See 481 U.S., at 130, 133, 107 S.Ct. 1671; *Schiro v. Farley,* 510 U.S. 222, 228-229, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994). Ordinary civil practice does not allow a forfeited affirmative defense whose underlying facts were not developed below to be raised for the first time on appeal. See *Weinberger v. Salfi,* 422 U.S. 749, 764, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Metropolitan Housing Development Corp. v. Arlington Heights,* 558 F.2d 1283, 1287 (C.A.7 1977). The ability to raise even constitutional errors in criminal trials for the first time on appeal is narrowly circumscribed. See Fed. Rule Crim. Proc. 52(b); *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Comity and finality justified this departure from ordinary practice for historically rooted equitable defenses such as exhaustion. See *Granberry, supra,* at 134, 107 S.Ct. 1671. But limitations was not such a defense.

Also, *Granberry* and the like raise the possibility that the courts can impose a procedural defense over the

State's affirmative decision to waive that defense. The Court takes care to point out that this is not such a case, *ante,* at ----11, but it invites such cases in future. After all, the principal justification for allowing such defenses to be raised *sua sponte* is that they " 'implicat[e] values beyond the concerns of the parties,' " including " 'judicial efficiency and conservation of judicial resources' " and "the expeditious handling of habeas proceedings." *Ante,* at ----, ----6, 8 (quoting *Acosta v. Artuz,* 221 F.3d 117, 123 (C.A.2 2000)). There are many reasons why the State may wish to disregard the statute of limitations, including the simple belief that it would be unfair to impose the limitations defense on a particular defendant. On the Court's reasoning, a district court would not abuse its discretion in overriding the State's conscious waiver of the defense in order to protect such " 'values beyond the concerns of the parties,' " *ante,* at ----6. [FN3] Under the Civil Rules, by contrast, amending a party's pleading over his objection would constitute a clear abuse of the trial court's discretion.

> FN3. In order to avoid this seemingly unavoidable conclusion, the Court asserts, without relevant citation or reasoning, that "should a State intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice." *Ante,* at ----11, n. 11. This assertion is contrary to our statement in *Granberry v. Greer,* 481 U.S. 129, 134, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987)-a case which, on the Court's view, it makes "scant sense to distinguish," *ante,* at ----10-that an appellate court may dismiss an unexhausted petition *sua sponte* in "cases in which the State fails, *whether inadvertently or otherwise,* to raise an arguably meritorious nonexhaustion defense." (Emphasis added.) To support its assertion, the Court cites nothing but its own earlier statement: "Ordinarily in civil litigation, a statutory time limit is forfeited if not raised in a defendant's answer or in an amendment thereto. Fed. Rules Civ. Proc. 8(c), 12(b), and 15(a). And we would count it an abuse of discretion to override a State's deliberate waiver of a limitations defense." *Ante,* at ----2. But as the statement itself shows, the "ordinary" inability to override the State's "intelligent" waiver is coupled with an "ordinary" automatic forfeit of the defense if it is not timely raised. The Court does not say why it makes sense, for the statute of limitation of § 2244(d)(1)(A), to reject (as it does) the first part of the ordinary practice (automatic forfeiture), while embracing the second (inability to override intelligent waiver). The *reason* for rejecting the first part surely applies just as well to the second: Section 2244(d)(1)(A) supposedly " 'implicate[s] values beyond the concerns of the parties,' " including " 'judicial efficiency,' " " 'conservation of judicial resources' " and "expeditious handling of habeas proceedings." *Ante,* at ----, ----6, 8.

**\*12** In sum, applying the ordinary rule of forfeiture to the AEDPA statute of limitations creates no inconsistency with the Habeas Rules. On the contrary, it is the Court's unwarranted expansion of the timeliness rule enacted by Congress that is inconsistent with the statute, the Habeas Rules, the Civil Rules, and traditional practice. I would hold that the ordinary forfeiture rule, as codified in the Civil Rules, applies to the limitations period of § 2244(d). I respectfully dissent.

U.S.,2006.
Day v. McDonough
--- S.Ct. ----, 2006 WL 1071410 (U.S.)